IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                  No. CR 01-1547 JP

BENJAMIN HINOJOS,

    Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND PROPOSED SENTENCE

On September 15, 2008, the United States Probation Office filed a Petition for Revocation of Supervised Release (Doc. No. 58) that charged Defendant with violating two mandatory conditions of supervision and one special condition of supervision. On January 15, 2009, the Court held an evidentiary hearing on the Petition for Revocation of Supervised Release. At the hearing, the United States of America was represented by Assistant United States Attorney Joel R. Meyers; Defendant was present and was represented by Assistant Federal Public Defender Alonzo J. Padilla. As evidence of the charged violations, the government presented the testimony of three witnesses and numerous exhibits.

As background, the Court notes that on November 7, 2002, the Court sentenced the Defendant to a forty-six month term of imprisonment and imposed a three-year term of supervised release based on Defendant's plea of guilty to distribution of fifty grams or more of cocaine base in violation of 21 U.S.C. 841(b)(1)(A). After Defendant served his term of incarceration and began his term of supervised release, Defendant was charged with violating a special condition of supervised release which required him to participate in and successfully complete a six-month period of home confinement and also charged him with violating a special condition of supervised

release that required Defendant to refrain from the use and possession of alcohol. Defendant admitted the charged violations and on March 22, 2007, the Court sentenced Defendant to a three-month term of imprisonment because of the violations and imposed a new two-year term of supervised release with various conditions. On May 5, 2007, the Defendant commenced the second term of supervised release. Defendant was placed on a home confinement program on June 8, 2007 for a period of up to twelve months and successfully completed that program and was discharged from that condition on March 28, 2008. On April 11, 2008, two weeks after discharge from the home confinement program, Defendant was arrested and charged with aggravated DWI. On June 25, 2008, Defendant submitted an alcohol test which reflected that Defendant had alcohol in his system. On September 13, 2008, Defendant engaged in conduct that resulted in the United States Probation Office charging that Defendant violated a mandatory condition of supervision by committing new crimes of false imprisonment, aggravated battery, assault against a household member, and interference with communication. In addition, the United States Probation Office charged that Defendant violated a special condition of supervision that required him to refrain from using alcohol because of evidence that on September 13, 2008 he consumed alcohol around the time he allegedly committed the new criminal offenses.

Following the evidentiary hearing on January 15, 2009, the parties filed trial briefs on February 10, 2009: United States' Brief (Doc. No. 76) and Defendant's Trial Brief and Final Argument (Doc. No. 77).

The Court has considered all of the evidence presented at the hearing on January 15, 2009 and the parties' subsequently filed briefs.

FINDINGS OF FACT

On June 29, 2008, Defendant was tested for alcohol and the test was positive indicating that Defendant had consumed alcohol. On July 2, 2008, Defendant met with United States Probation Officer Marea Williams and admitted that he had consumed alcohol the evening of June 28, 2008 prior to the test on June 29, 2008.

On April 11, 2008, Defendant was arrested for aggravated driving under the influence, but Defendant contested that charge which eventually was dismissed. Defendant did not report the April 11, 2008 aggravated driving under the influence charge to his probation officer within seventy-two hours as required by a condition of supervised release; however, the Petition for Revocation of Supervised Release does not charge Defendant with having violated the condition that required him timely to report the arrest on April 11, 2008. Nevertheless, it is clear that on April 11, 2008 Defendant consumed some alcohol even though he was not convicted of the charge of aggravated driving under the influence that day.

On the evening of September 12, 2008 or the early morning of September 13, 2008, Defendant, after or while consuming alcohol, viciously beat his girlfriend Monique Salazar with whom he lived as a household member causing Ms. Salazar to bleed extensively throughout her residence. Ms. Salazar attempted to hide in the bathroom of her home and to escape through the bathroom window. However, Defendant broke down the door to the bathroom and pulled Ms. Salazar away from the window preventing her from leaving the home. On September 13, 2008, Bernalillo County Sheriff Deputy Edward Vigil investigated the incident that had occurred in the early morning hours of that day or the late evening of the preceding day. Ms. Salazar told Detective Vigil that Defendant had been drinking and that Defendant beat her and choked her but

she did not lose consciousness.  In addition, Ms. Salazar told Detective Vigil that she escaped Defendant's chokehold and attempted to lock herself in her bathroom and escape through the bathroom window.  While in the bathroom, Ms. Salazar was screaming for help and Defendant kicked in the bathroom door, pulled Ms. Salazar away from the window and commenced beating her in the face, again.  Ms. Salazar tried to telephone the police but Defendant grabbed the phone from Ms. Salazar and threatened that she "was not calling anybody and . . . not going anywhere."  Despite the information obtained during Detective Vigil's investigation, no criminal charges were filed against Defendant based on the investigation.

## CONCLUSIONS OF LAW

**Charged Violation No. 1**.  Defendant was charged with violating the mandatory condition of supervision that he not commit another crime.  The charged violation was that: "On September 13, 2008, Bernalillo County Sheriff's Officer Edward Vigil conducted an investigation and charged the Defendant with the following: false imprisonment (fourth degree felony), aggravated battery (fourth degree felony), assault against a household member (misdemeanor), and interference with communication (petty misdemeanor).

**False Imprisonment.**  § 30-4-3 N.M.S.A. 1978 defines the offense of false imprisonment as follows: "False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so."  The Court concludes that the facts proven by a preponderance of the evidence show that the Defendant committed the fourth degree felony offense of false imprisonment by intentionally confining or restraining Ms. Salazar without her consent knowing that he had no lawful authority to do that.

4

**Aggravated Battery**[1].  § 30-3-5 N.M.S.A. 1978 states that:  "A.  Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.  B.  Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.  C.  Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony."  New Mexico Uniform Jury Instruction 14-131 defines "great bodily harm" as follows: "Great bodily harm means an injury to a person which [creates a high probability of death] [or] [results in serious disfigurement] [or] [results in loss of any member or organ of the body] [or] [results in permanent or prolonged impairment of the use of any member or organ of the body]."  The Court concludes that the evidence shows that the injuries inflicted by Defendant on his girlfriend, Ms. Salazar, although despicable and serious, did not amount to "great bodily harm" as defined in New Mexico Uniform Jury Instruction 14-131 and, therefore, Defendant did not commit the felony offense of aggravated battery.

**Assault Against a Household Member**.  § 30-3-14 N.M.S.A. 1978 defines this offense as "A.  Assault against a household member with intent to commit a violent felony consists of any person assaulting a household member with intent to kill or commit any murder, mayhem, criminal sexual penetration in the first, second or third degree, robbery, kidnapping, false imprisonment or burglary."  Consistent with the Court's conclusion that the Defendant committed the offense of

---

[1]  In the United States' Brief (Doc. No. 76), counsel for the government argued that Defendant committed the offense of aggravated battery against a household member in violation of § 30-3-16 N.M.S.A. 1978.  However, Violation No. 1 does not mention this offense.

false imprisonment, the Court concludes that the Defendant also committed the felony offense of assault against a household member with intent to commit a violent felony because the statutory definition includes an assault coupled with an intent to commit false imprisonment.

**Interference with Communications (petty misdemeanor).** § 30-12-1.D N.M.S.A. 1978 defines interference with communications as including: "Interference with communications consists of knowingly and without lawful authority: . . . D.  preventing, obstructing or delaying the sending, transmitting, conveying or delivering in this state of any message, communication or report by or through telegraph or telephone." The Court concludes that the Defendant committed the offense of interference with communications by preventing his girlfriend, Ms. Salazar, from calling the police by grabbing the phone she was attempting to use and telling her that she was not going anywhere as she was trying to call the police on the morning of September 13, 2008.

**Charged Violation No. 2**. This also charges Defendant with violating the mandatory condition that he must not commit another crime. The charged violation is that: "On April 11, 2008, the Defendant was charged in Bernalillo County Metropolitan Court with aggravated DWI, as evidenced by Criminal Complaint DW195708." The evidence demonstrated that although Defendant had consumed alcohol, the charge of aggravated DWI was dismissed and Defendant was not convicted of that crime. Consequently, the Court concludes that Defendant did not violate Charged Violation No. 2 because he was not convicted of the offense of aggravated DWI, although there is evidence that Defendant had been drinking alcohol on April 11, 2008, a matter that relates to Charged Violation No. 3.

**Charged Violation No. 3**. Here, Defendant is charged with violating the special condition of supervision that Defendant must refrain from the use and possession of alcohol. The evidence

shows that Defendant used alcohol on April 11, 2008, on June 29, 2008 and on September 12 and 13, 2008 in violation of this special condition of supervision.  Consequently, the Court concludes that Defendant violated the special condition that he must refrain from the use and possession of alcohol as charged under Violation No. 3.

## PROPOSED SENTENCE

The Court proposes to impose a sentence of twenty-six months imprisonment as recommended by the United States Probation Office.  The Court has decided to impose this sentence in accordance with United States Sentencing Guidelines and alternatively under 18 U.S.C. § 3553(a).

**Sentence under United States Sentencing Guidelines.**  The Court concludes that Defendant's commission of the crimes of false imprisonment in violation of § 30-4-3 N.M.S.A. 1978 and assault against a household member with intent to commit a violent felony in violation of § 30-3-14 N.M.S.A. 1978 both constitute grade A violations as defined in United States Sentencing Guideline § 7B1.1(a)(1).  The Defendant's criminal history category is I.  A grade A violation combined with a criminal history category of I places Defendant in a revocation imprisonment range of twenty-four to thirty months imprisonment.  U.S.S.G. § 7B1.4(a)(2).

The Court is in agreement with the statement by the United States Probation Office supporting its recommendation of a twenty-six month period of incarceration with no term of supervised release to follow.  The United States Probation Office stated in its Memorandum to the Court dated November 17, 2008:

> "The Defendant has demonstrated with two terms of supervised release, that he is unable to maintain compliance not only with the Court's directives but state laws as noted by his arrests.  The Defendant continues to have a significant alcohol abuse addiction that has yet to be addressed by him notwithstanding the intensive

counseling intervention and/or court sanctions.  Additionally, the decision to again abscond from supervision suggest (sic) he is not amenable to supervision."

**Proposed Sentence Under 18 U.S.C. § 3553(a).**  In the event it is determined that the Court erroneously concluded that Defendant committed grade A violations by committing the state crimes of false imprisonment and assault against a household member as charged under Violation No. 1, the Court determines that the same sentence of twenty-six months incarceration without a term of supervised release to follow is the appropriate sentence suggested by 18 U.S.C. § 3553(a).

18 U.S.C. § 3553(a) requires a Court to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of § 3553(a).  In determining a sentence that complies with this standard, the Court must first consider "(1) the nature and circumstances of the offense and the history and characteristics of the Defendant."  In this instance, the "offense" (actually offenses) involved the Defendant repeatedly violating the special condition of supervision that required him to refrain from the use of alcohol which contributed to his violent attack on Monique Salazar and his restraint of her effort to escape the attack and call the police.  The Court considers this to be extremely serious misconduct.

As to the history and characteristics of the Defendant, the Court notes that the underlying offense, in regard to which the Defendant was sentenced in 2002 to a forty-six month period of incarceration, resulted in Defendant's plea of guilty to the charge of distribution of fifty grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Under the sentence imposed in 2002, the special conditions of supervision included a condition that "The Defendant must abstain from the use of alcoholic beverages or other intoxicants."  Judgment in a Criminal Case (Doc. No. 38).  After Defendant's release from prison his three-year term of supervised release began June 2, 2006.

On June 5, 2006, three days after commencing his term of supervised release, Defendant met with his probation officer who suspected Defendant was under the influence of alcohol, which was confirmed by an alcohol test. Defendant admitted consuming alcohol the night before meeting his probation officer. Two weeks later on June 18, 2006, a drug test showed that Defendant had used cocaine. On June 25, 2006, one week later, Defendant again tested positive for the use of alcohol. On August 19, 2006, the Defendant absconded from supervision after yet again testing positive for alcohol consumption.

Defendant remained a fugitive until February 9, 2007 when he was arrested and detained pending a hearing on a petition to revoke supervised release. At a hearing on March 22, 2007, the Defendant was sentenced to three months custody to be followed by a two-year term of supervised release based on his violation of conditions of supervised release. On June 8, 2007, Defendant was placed on a home confinement program for a period of up to twelve months and was successfully discharged early from that program on March 28, 2008 because of compliance with the conditions. However, only two weeks after discharge from the home confinement program, Defendant was arrested on April 11, 2008 and charged with aggravated DWI. This was followed by Defendant's admission that on June 28, 2008 he had again used alcohol after he was confronted with the results of an alcohol test which was positive. Ultimately the Defendant's use of alcohol on September 12 or 13, 2008 contributed to Defendant's vicious attack on his girlfriend, Monique Salazar. Defendant's history and characteristics suggest that, except while incarcerated or under strict home confinement, he is incapable of abiding by the condition that he refrain from the use of alcohol; this has resulted in him committing multiple criminal acts as determined by a preponderance of the evidence although he has not been convicted of those criminal acts.

Turning to 18 U.S.C. § 3553(a)(2), the Court concludes that a sentence of twenty-six months imprisonment satisfies the purposes outlined under paragraph (2) for the following reasons.

Subparagraph (2)(A) requires the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." With respect to this purpose the Court notes that a sentence of twenty-six months imprisonment is only slightly more than one-half of the initial sentence of forty-six months for the underlying offense of distributing crack cocaine which did not involve violent conduct such as occurred on September 13, 2008 when Defendant violated conditions of supervised release. Hence, as a matter of comparison, it could be stated that the vicious attack on September 13, 2008 was more serious than the sale of crack cocaine in 2001. Nevertheless, the Court believes that imprisonment for twenty-six months will reflect the seriousness of the offenses which the Court found by a preponderance of the evidence the Defendant committed despite the absence of criminal convictions. In addition, this sentence should finally drive home to the Defendant the requirement that he have future respect for the law because it should give him the message that although his bad conduct did not result in criminal convictions, it does have serious consequences when it involves violations of orders of the Court regarding supervised release. Obviously, a more than two-year sentence of incarceration "provides just punishment for the offense."

In regard to 18 U.S.C. § 3553(a)(2)(B), a twenty-six month period of incarceration should "afford adequate deterrence to further conduct" because it will give Defendant plenty of time to reflect on what will happen to him the next time he pursues similar bad conduct.

As to 18 U.S.C. § 3553(a)(2)(C), the Court believes that a sentence of more than two years imprisonment will protect the public from Defendant's further driving of vehicles while the

Defendant is intoxicated and will protect Ms. Salazar from further vicious assaults for a significant length of time.

In regard to 18 U.S.C. § 3553(a)(2)(D), the sentence will "provide the Defendant with educational or vocational training, medical care or other correctional treatment in the most effective manner" especially because the Court will make a recommendation that the Defendant participate in the Bureau of Prisons' 500 hour alcohol and drug treatment program which could substantially benefit the Defendant if he will participate in that voluntary program.

In regard to 18 U.S.C. § 3553(a)(3), the Court has taken into consideration the range of sentences from incarceration for the time Defendant already has served, with an additional period of supervised release, to a sentence of incarceration of longer than twenty-six months, but has been guided by the recommendation of United States Probation and has agreed that its recommended sentence of twenty-six months imprisonment without a new term of supervised release is appropriate.

In regard to 18 U.S.C. § 3553(a)(4)(B), the Court has consulted the applicable guidelines or policy statements issued by the Sentencing Commission as reflected by the alternative sentence imposed above under United States Sentencing Guidelines.

The Court emphasizes that the proposed sentences, stated above in the alternative, are just that – **proposed sentences**. At the disposition hearing scheduled on March 9, 2009 at 1:30 p.m., counsel for the government and counsel for the Defendant as well as the Defendant himself will be afforded an opportunity to argue for different sentences.

_James A. Parker_
SENIOR UNITED STATES DISTRICT JUDGE